IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ALBERT GENE JOHNSON | § | |
| TDCJ-CID #1027552 | § | |
| V. | § | C.A. NO. C-05-223 |
| | § | |
| SERGEANT MARCUS D. FORD, ET AL., | § | |

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff is a Texas state prisoner currently incarcerated at the McConnell Unit in Beeville, Texas.  He filed this lawsuit on May 4, 2005, complaining that on November 19 , 20, and 21, 2004, defendants were deliberately indifferent to his serious medical needs when they refused to escort him to the infirmary for his twice-daily insulin injections despite his repeated requests to do so. (D.E. 1).  Defendants Ford and Barrios move for summary judgment to dismiss plaintiff's claims against them on the grounds of : (1) failure to exhaust administrative remedies; (2) *de minimis* injury; and  (3) qualified immunity.  (D.E. 36).  They also argue that they are entitled to Eleventh Amendment immunity as to any claims for monetary damages brought against them in their official capacities.  Id.  Plaintiff has filed a response in opposition.  (D.E. 39).  For the reasons discussed below, defendants' motion for summary judgment is denied in all respects save and except eleventh immunity grounds.

## I.  JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.   The parties consented to the jurisdiction of a Magistrate Judge.  See (D.E. 20, 35).  On February 6, 2006, this action was re-assigned by Order of Re-Assignment. (D.E. 38).

## II.  SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS

The following facts are not in dispute:

Plaintiff is a Type 1 diabetic requiring two insulin injections daily.  POC[1] at ¶ 8.  He has been issued annual medical lay-in passes to receive a morning and an evening insulin shot.  POC at  Ex. A and Ex. B.

On November 19, 2004, plaintiff was assigned to 3-Building, A-Pod 68-B-Cell in transient status.  POC Ex. G.  At approximately 2:45 a.m., plaintiff reminded Officer John Doe-A ("Officer A") that he needed to get his insulin shot.  POC at ¶ 10.  Officer A responded that he would escort plaintiff to the infirmary after he finished distributing breakfast to A-section.  Id.  Officer A left and plaintiff did not see him again until count at 5:00 a.m.  POC at ¶ 12.  Plaintiff told Officer A that he was experiencing blurred vision and frequent urination, and that these were symptoms of his blood sugar getting too high, and that he needed his insulin shot.  Id.  Officer A stated that he had forgotten about plaintiff and that he would send a sergeant to escort him to medical.  POC at ¶ 13.

At 6:30 a.m., the shift changed and Officer Diaz conducted count.  POC at ¶ 14.  Plaintiff told Officer Diaz that he needed his shot, and Officer Diaz stated that he would tell Sergeant Barrios.  POC at ¶¶ 14-15.  At 9:00 a.m., Sergeant Barrios made her rounds and plaintiff told her he had not gotten his morning injection and was experiencing high blood sugar symptoms.  POC at ¶ 15.  Sergeant Barrios stated that she needed to verify that plaintiff was diabetic, and would have him escorted to the infirmary in the evening.  POC at ¶ 17.

At 3:45 p.m., Officer Diaz brought dinner, and plaintiff complained that he needed his evening shot.  POC at ¶ 19.  Officer Diaz stated that he had told Sergeant Barrios and that he would

---

[1] "POC" refers to plaintiff's original complaint filed at D.E. 1.

be escorted.  Id.  Plaintiff was not escorted and missed his second injection.  Id.  Plaintiff became very thirsty, his vision became worse, and he needed to urinate frequently.  Id.  He became worried about becoming blind and having a heart attack, causing his blood pressure to rise.  Id.

At 7:00 p.m., Officer John Doe-B ("Officer B") conducted count.  POC at ¶ 23.  Plaintiff told Officer B that he had not received his injection, and Officer B stated that he would inform a sergeant.  Id.  At 8:00 p.m., Sergeant Ford came to plaintiff's cell and plaintiff explained the problem.  POC at ¶ 24.  Sergeant Ford stated that he needed to verify plaintiff was diabetic, and then he would have plaintiff escorted to medical.  POC at ¶ 26.  Plaintiff did not see Sergeant Ford the rest of the night.  Id.

On November 20, 2004, plaintiff told Officer B that he still had not gotten his shot.  POC at ¶ 28.  Plaintiff did not see Sergeant Ford or Sergeant Barrios on November 20 or 21, despite his requests to speak with them.  POC at ¶ 30.

On November 20, 2004, plaintiff wrote to the Texas Board of Criminal Justice, Office of the Inspector General, Investigations Division, complaining that for two days going on three he had not been taken to medical to get his insulin shot.  POC Ex. C and Ex. D.  The Office of the Inspector General forwarded plaintiff's complaint to the Office of Professional Standards, Health Services. POC, Ex. E.

On November 21, 2004, plaintiff woke up on the floor lying in a pool of urine, and realized that he had passed out.  POC at 32.  He sent an I-60 request to PA Woodcroft complaining that he had not had his shot in three days and that he was writing to his mother to contact the Inspector General's Office.  POC Ex. I.  Nurse Vaughn responded that situation would be addressed and that security would be notified by medical and he would be escorted to the infirmary.  Id.

By Inter-Office Communication dated November 24, 2004, Warden Stephens notified Captain Martinez that plaintiff had complained that he had been denied an escort to medical for his daily insulin shots while assigned to 3-Building A-Pod 68B-Cell in transient status.  POC Ex.G. Captain Martinez wrote:

> Due to the seriousness of the allegations, I am requesting that you conduct an investigation and forward a response to my office no later than **Tuesday, November 30, 2004.**

POC Ex. G (emphasis in original).

On December 6, 2004, plaintiff filed an I-60 request inquiring into the status of the investigation concerning the denial of the medical escorts in November.  POC Ex. H.

By letter dated January 3, 2005, plaintiff was informed that, effective September 1, 2004, offenders would be required to utilize the step 1 and step 2 grievance program mechanism to resolve health-related issues.  POC Ex. F.

On January 8, 2005. plaintiff filed a step 1 grievance complaining about the November 19-21 incident concerning the denial of escort to medical to receive his insulin shot.  POC Ex. J. The grievance was returned unprocessed with a notation that the grievable time period had expired.  POC Ex. K.  On January 16, 2005, plaintiff filed a step 2 appeal.   POC Ex. L.  On January 26, 2005, plaintiff's step 2 appeal was returned on the grounds that an offender cannot submit a step 2 appeal on a step 1 grievance that was returned unprocessed.  POC Ex. M.

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must examine "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motions.  Caboni v. General Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence or evaluate the credibility of witnesses.  Id.  Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify on the matters stated therein."  FED. R. CIV. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559 (5th Cir. 1992) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (stating that courts cannot consider hearsay evidence in affidavits and depositions).  Unauthenticated and unverified documents do not constitute proper summary judgment evidence.  King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  FED. R. CIV. P. 56(e); Anderson, 477 U.S. at 248-49.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will

be granted." <u>Caboni</u>, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed." <u>Anderson</u>, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Id.</u> at 248.

## IV.  DISCUSSION

### A.     Failure to Exhaust Administrative Remedies

Defendants move for summary judgment to dismiss plaintiff's claims for failure to exhaust administrative remedies arguing that plaintiff failed to file successfully a Step 1 grievance or Step 2 appeal challenging defendants' failure to escort him to medical to receive his twice-daily insulin injections.

Section 1997e(a) of Title 42 provides:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents. <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002); <u>Clifford v. Gibbs</u>, 298 F.3d 328, 330-31 (5th Cir. 2002). Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. <u>Booth v. Churner</u>, 532 U.S. 731, 734 (2001); <u>Wright v. Hollingsworth</u>, 260 F.3d 357, 358 (5th Cir. 2001). If an inmate chooses to file and pursue a lawsuit prior to exhausting administrative remedies, his suit

must be dismissed with prejudice for purposes of proceeding *in forma pauperis*.  Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998).

The Texas Department of Criminal Justice (TDCJ) currently provides a two-step procedure for presenting administrative grievances.  Step 1 requires the prisoner to submit an administrative grievance at the institutional level.  Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998) (citing to TDCJ Administrative Directive No. AD-03.82 (rev.1), Policy, ¶ IV (Jan. 31, 1997)).  After an investigation, the unit grievance investigator prepares a report and makes a recommendation to the final decision maker, which may be the warden, assistant warden, facility administrator, assistant facility administrator, or health administrator.  Wendell, 162 F.3d at 891.  Step 2 permits the prisoner to submit an appeal to the division grievance investigator with the Institutional Division of the TDCJ.  Id.  After an investigation, the departmental grievance investigator prepares a report and makes a recommendation to the final decision maker for step 2 of the process, which is the director, deputy director, regional director or assistant director.  Id.

The grievance procedure takes approximately 90 days to exhaust.  Wendell, 162 F.3d at 891.  Prisoners are allowed 15 calender days to file a step 1 grievance.  Id. (citing TDCJ Admin. Directive No. AD-3.82 (rev.1), Policy ¶ VI (Jan. 31, 1997)).  The response to the step 1 grievance is due within forty days after receipt of the grievance.  Id.  The prisoner then has 10 days to submit an appeal.  Id.  The response to the step 2 grievance is due within forty days after receipt of the prisoner's appeal.  Id.  The TDCJ Inmate Grievance System provides that, if an inmate does not receive a written decision by the 180th day after the grievance is filed, he may proceed with his other state or federal court remedies.  Tex. Gov't Code § 501.008(d)(2) (Vernon 1998).

Defendants argue that plaintiff did not properly exhaust his administrative remedies because he did not follow the proper procedures for filing grievances.  Relying on plaintiff's exhibits, defendants point out that his step 1 grievance was returned unprocessed because it was filed outside of the grievable time period, and his step 2 appeal was then not considered because his step 1 grievance was unprocessed.  Defendants' argument, however, ignores that plaintiff wrote to the Inspector General on November 20 and to PA Woodcroft on November 21.  POC at Ex. C, Ex. D, and Ex. I.  On November 24, plaintiff was advised by Warden Stephens via copy of a memorandum addressed to Captain Martinez that the matter would be investigated.  See POC Ex. G.  On December 6, 2004, plaintiff inquired as to the status of the investigation.  POC Ex. H.

The primary purpose of the exhaustion requirement is to provide prison officials with "time and opportunity to address complaints internally." Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004) (quoting Porter, 534 U.S. at 525).  In this case, plaintiff's complaint concerning the November 2004 incident was made known to the McConnell Unit warden and officials both while it was happening and immediately thereafter.  Moreover, plaintiff was assured that the matter was being investigated via the copy of the memo sent from Warden Stephens to Captain Martinez.  On January 3, 2005, the TDCJ notified plaintiff that the two-step grievance system was now required for all medical dispute arising after September 1, 2004, POC Ex. F, and plaintiff filed his step 1 grievance five days later, on January 8, 2005, POC Ex. J.

Although the Fifth Circuit has taken a "strict approach" to the exhaustion requirement, it "may be subject to certain defenses such as waiver, estoppel, or equitable tolling." Days v. Johnson, 322 F.3d 863, 866 (5th Cir. 2003) (quoting Wendell, 162 F.3d at 890.  For example, the exhaustion requirement may be excused when administrative remedies are not "personally available." Id. at

867.  Unavailability can occur when physical injury prevents its use, see id., or when prison officials ignore or interfere with the prisoner's pursuit of relief, see Underwood, 151 F.3d at 295.  Here, plaintiff was entitled to rely on the representations of Warden Stephens that the matter was being investigated. Moreover, it is uncontested that defendants had notice of plaintiff's claims as Warden Stephens did order an investigation of the incident, although no final report is included in any of defendants' summary judgment materials.   POC Ex. G.

Clearly, plaintiff neither ignored nor by-passed the prison grievance system before filing his federal lawsuit. Defendants were on notice of his claims due to the investigation ordered by Warden Stephens.  Plaintiff has met his burden of giving sufficient notice to prison officials of the basis of his claims.  Thus, it is recommended that defendants' motion for summary judgment to dismiss plaintiff's claims for failure to exhaust be denied.

**B.      Claims against defendants in their official capacities.**

Plaintiff is seeking monetary and punitive damages against defendants.

A suit against a prison employee in his official capacity is the same as a suit against the entity the employee represents.  Kentucky v. Graham, 473 U.S. 159, 166 (1985). The Eleventh Amendment bars a suit for money damages against a state or state agency.  Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996).  A judgment may not be entered against a state officer in his official capacity for violating federal law in the past, although prospective relief may be granted. Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 146, 113 S. Ct. 684, 688-89 (1993).

To the extent plaintiff is suing defendants in their official capacities for money damages, those claims are barred by the Eleventh Amendment.  Thus, it is respectfully recommended that

defendants' motion for summary judgment to dismiss plaintiff's claims against them for money damages in their official capacities be granted, and those claims dismissed with prejudice.

**C.      Qualified Immunity**

Defendants' move for summary judgment on the grounds of qualified immunity.  The qualified immunity determination involves a two-step analysis: first, "'whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right.'"   Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003) (quoting Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001)).  If a constitutional violation is alleged, the Court must next determine "whether the right was clearly established – – that is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 624.  Once defendants have invoked the defense of qualified immunity, the burden shifts to plaintiff to show that the defense is inapplicable.  McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

The threshold question in a qualified immunity analysis is whether a constitutional right would have been violated on the facts alleged.  Saucier v. Katz, 533 U.S. 194, 200 (2001).

**1.      Deliberate indifference to serious medical needs.**

Plaintiff contends that defendants were deliberately indifferent to his serious medical needs when they refused to escort him to the infirmary for his twice-daily insulin injections despite his repeated requests to do so.

***Step 1: Constitutional violation.***

As the Supreme Court has explained "[d]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."  Estelle v. Gamble, 429 U.S. 97, 105 (1976).  In

order to state a claim of inadequate medical treatment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106.

A disagreement with the level and type of treatment is not actionable under the Eighth Amendment.  Estelle, 429 U.S. at 107; Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995); Young v. Gray, 560 F.2d 201 (5th Cir. 1977).  An incorrect diagnosis does not state an Eighth Amendment claim because the deliberate indifference standard has not been met.  Domino, 239 F.3d at 756.  A "plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  Id. (quoting Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985)).  However, delay in treatment may be actionable under § 1983 if there has been deliberate indifference and the delay results in substantial harm.  Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); see also Stewart v. Murphy, 174 F.3d 530, 537 (5th Cir. 1999); Hudson v. McHugh, 148 F.3d 859, 864 (5th Cir. 1998).

Here, the uncontested facts establish that plaintiff had on his person two lay-in passes establishing his diabetic status and permission to be escorted to medical for insulin injections.  POC Ex. A and Ex. B.  Plaintiff repeatedly spoke to guards and supervisors about being escorted to medical for his shots, but was overlooked or ignored.  See POC at ¶¶ 10, 15, 12, 19, 25.  He suffered pain, fear, confusion, physical discomfort, and anxiety.  Id.  Moreover, the two federal courts of appeals that have addressed the issue have held that the denial of insulin to insulin-dependent diabetic prisoners on its face amounts to deliberate indifference.  See Scinto v. Preston, slip op. 2006

11

WL 637190 (4th Cir., Mar. 14, 2006); Garretson v. City of Madison Heights, 407 F.3d 789 (6th Cir. 2005).

Similarly, to the extent defendants argue that plaintiff's injuries are *de minimis*, or not of a "constitutional magnitude," it is noted that there are no records available for the dates at issue because plaintiff was not seen in medical during this time and therefore,  there is no objective data of his blood sugar levels over those three days, nor is there information as to any damage that he might have suffered.  Curiously, defendants, have not offered *any* of plaintiffs medical records. Clearly, a genuine issue of a material fact issue exists concerning plaintiff's injuries.

     ***Step 2: Objective reasonableness.***

For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  In this situation, whether a defendants' actions were objectively reasonable depends on whether he knew plaintiff was an insulin dependent diabetic or not.  Here, plaintiff has presented uncontested evidence establishing that he told every officer that he encountered that he was diabetic, that he had not received his insulin and  that he was suffering from high blood sugar levels.  He also presented to the officers copies of his lay-in passes evidencing permission for him to be escorted to medical to get his injection.  Defendants' decisions to ignore this information was not objectively reasonable such that they are not entitled to qualified immunity.  Thus, defendants' motion for summary judgment on the grounds of qualified immunity is denied.

## V.  <u>CONCLUSION</u>

Plaintiff's claims against defendants in their official capacities for money damages are barred by the Eleventh Amendment, and defendants' motion for summary judgment to dismiss those claims is granted.  The remainder of defendants Barrios and Ford's motion for summary judgment is DENIED.

ORDERED this 14th day of April, 2006.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE